IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY KING, | CIVIL ACTION |
| Plaintiff, | NO. 17-884 |
| v. | |
| JEFFERSON B. SESSIONS, III, ATTORNEY GENERAL OF THE UNITED STATES, et al, | |
| Defendants. | |

**MEMORANDUM OPINION**

**Schmehl, J.** /s/ JLS                                         June 15, 2018

### I.     INTRODUCTION

Before the Court is the motion to dismiss of Defendants, Jefferson B. Sessions, III, Attorney General of the United States[1], and Thomas E. Brandon, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "Defendants") (Docket No. 11). Plaintiff, Timothy King (hereinafter "Plaintiff") has filed an opposition to the motion, and Defendants have filed a reply.

Plaintiff's Complaint asserts an as-applied challenge to the constitutionality of 18 U.S.C. § 922(g)(1) under the Second Amendment of the United States Constitution. Having read the parties' briefing, and after oral argument, for the reasons that follow, I find that Plaintiff cannot rebut the presumption that he is disqualified from possessing a firearm. Therefore, I will grant the motion to dismiss.

---

[1] On February 9, 2017, Sessions was sworn in as Attorney General of the United States. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Sessions should be substituted for the former Attorney General of the United States as a defendant in this matter.

## II. BACKGROUND

"Enacted in its earliest incarnation as the Federal Firearms Act of 1938, [18 U.S.C. § 922(g)(1)] initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1538 (2010) (citations omitted). Particularly, restrictions provide that any person who "has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" may not possess firearms or ammunition. 18 U.S.C. § 922 (g)(1). Further, the Federal Firearms Act also prohibits lying about material facts to obtain a firearm, stating:

> Any person in connection with the acquisition or attempted acquisition of any firearm from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale."

18 U.S.C. § 922(a)(6). A person guilty of violating § 922(g)(1) or § 922(a)(6) has committed a Class C felony and may be sentenced to up to 10 years in prison. 18 U.S.C. §§ 924(a)(2), 3559(a)(3).

On November 17, 1982, Plaintiff was tried and convicted in the Philadelphia Municipal Court for carrying firearms without a license in violation of 18 Pa.C.S.A. § 6106; carrying a firearm on a public street or place in violation of 18 Pa.C.S.A. § 6108; unlawful sale of a firearm in violation of 18 Pa.C.S.A. § 6111; sale of a firearm without a retail license in violation of 18 Pa.C.S.A. § 6112; unlawfully loaning or lending a firearm in violation of 18 Pa.C.S.A. § 6115; and criminal conspiracy in violation of 18 Pa.C.S.A. §903. (*See* Compl., Exs. 1(a)and 1(b).) Plaintiff states that he "sold a firearm in June of

1982 without having the necessary Pennsylvania license. (Compl., ¶ 10.) He was sentenced to two years non-reporting probation and a $1,000 fine. (*Id.*)

Despite the fact that these state convictions disqualified him from purchasing a firearm, Plaintiff obtained a shotgun from a federal firearms licensee by falsely certifying that he was not a prohibited person. (*See* Defs' Memo; Ex. 1, p. 3.) The Bureau of Alcohol, Tobacco and Firearms then searched Plaintiff's home pursuant to a warrant and found Plaintiff to be in possession of twenty-one firearms. (*Id.*, p. 4.) In November of 1992, Plaintiff pled guilty in federal court to three counts, false statement in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6), receipt of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Plaintiff believed that he was not prohibited from possessing a firearm at the time because he had worked with firearms in his time in the Army National Guard. (Compl., ¶ 14.) Plaintiff was sentenced to three years' probation with six months of home confinement, and a $1,000 fine. (Compl., ¶ 15.)

On February 27, 2017, Plaintiff filed the instant action, alleging that he "desires to purchase and possess a firearm for defense of his employees, business, family, home and self." (Compl., ¶ 24.) Plaintiff's Complaint sets forth a cause of action for declaratory and injunctive relief for an "Interpretation of 18 U.S.C. § 921(a)(2)(B), 922(g)(1) in the Context of Specific State Convictions," and "Interpretation of 18 U.S.C. § 921(a)(2)(B), 922(g)(1) in the Context of a Federal §922(g)(1) Conviction Stemming From Prior State Misdemeanor Convictions." (Compl., ¶¶ 31- 32, 34-35.) Plaintiff alleges: 1) his 1982 convictions cannot be the basis for a firearms disability because, at the time, they were all

state misdemeanor convictions punishable by terms of imprisonment of two years or less; and 2) his 1992 felony conviction for violating § 922(g)(1) cannot be the basis for a firearms disability when the prohibition arose from his 1982 state misdemeanor convictions punishable by a term of imprisonment of two years or less. (Compl., ¶¶ 31, 34.)

Defendants filed a motion to dismiss Plaintiff's complaint on September 12, 2017, and after multiple extensions allowing for a response and a reply brief, oral argument was held on this issue on December 6, 2017.

### III. <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675,

679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

IV. **DISCUSSION**

Defendants move to dismiss the complaint in its entirety. For the reasons that follow, I will grant Defendants' motion and dismiss Plaintiff's Complaint.

A. **§922(g)(1) Bars Plaintiff From Possessing a Firearm**

There is no dispute that Second Amendment rights are limited. In *District of Columbia v. Heller,* the Supreme Court held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 554 U.S. 570, 635. This holding, however, was narrow and addressed only the "core" right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 634-35.

In this matter, the parties do not dispute that 18 U.S.C. §922(g)(1) prohibits Plaintiff from possessing a firearm due to his prior felony convictions. Therefore, I must examine whether Plaintiff's Complaint sufficiently asserts an as-applied constitutional challenge under the Second Amendment to §922(g)(1). In doing so, I must examine the case under the Third Circuit's *Marzzarella* standard.

B. **As-Applied Second Amendment Challenge**

The Second Amendment protects "the right of the people to keep and bear Arms[.]" U.S. Const. amend II. However, the Supreme Court "has not yet heard an as-applied challenge to a presumptively lawful ban on firearms possession." *Binderup v. U.S. Att'y Gen.*, 836 F.3d 336, 359 (3d Cir. 2016) (*en banc*), *cert. denied Sessions v.*

*Binderup,* 137 S. Ct. 2323 (June 26, 2017). In *Binderup*, the Third Circuit reiterated *Heller*'s holdings that the Second Amendment protects the right of "law-abiding, responsible citizens to use arms in defense of hearth and home," and that such a right is "not unlimited." *Binderup*, 836 F.3d at 343 (*quoting Heller*, 554 U.S. at 582). Further, the court repeated *Heller*'s statement that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful regulatory measures." *Id.* The *Binderup* court then reaffirmed *Marzzarella*'s "two-pronged approach to Second Amendment challenges to firearms restrictions" such as the instant restriction under §922(g)(1). *Binderup*, 836 F.3d at 346 (*quoting Marzzarella*, 614 F.3d at 89.) Accordingly, Plaintiff's as-applied challenge in this matter will be analyzed using the *Marzzarella* framework.

### C. Framework for an As-Applied Second Amendment Challenge Under *Marzzarella*

Under the *Marzzarella* framework, there are two steps that must be taken in evaluating an as-applied challenge to a firearm regulation. At step one, a challenger must prove that a presumptively lawful regulation burdens his Second Amendment rights. *Binderup*, 836 F.3d at 346-47. This requires a "challenger to clear two hurdles: he must 1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then 2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class." *Id.* at 347 (citing *Marzzarella* at 173-74). If a challenger succeeds at step one, courts then proceed to step two, where "the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny." *Id.*

### 1. Step One: Does a Presumptively Lawful Statute Burden Plaintiff's Right to Bear Arms?

As discussed above, under step one, Plaintiff must first prove that a presumptively lawful regulation burdens conduct protected by the Second Amendment. In order to do so, he must identify the traditional justifications for excluding his class from Second Amendment protections, and then present facts about himself that distinguish his circumstances from those of persons in the historically barred class. *Binderup*, 836 F.3d at 347 (*citing Barton,* 633 F.3d at 173-74.) "A challenger will satisfy the first step of the [*Marzzarella*] framework only if he proves that the law or regulation at issue burdens conduct protected by the Second Amendment." *Id.* at 356. "Not only is the burden on the challenger to rebut the presumptive lawfulness of the exclusion at *Marzzarella'*s step one, but the challenger's showing must also be strong." *Id.* at 347.

#### a. §922(g)(1)'s Ban is Presumptively Lawful

First, I find that the firearm ban contained in §922(g)(1) is presumptively lawful. As stated by the *Heller* court, longstanding prohibitions on the possession of firearms by felons are presumptively lawful. 554 U.S. at 626-27. Further, the Third Circuit has interpreted *Heller* as "delineat[ing] some of the boundaries of the Second Amendment right to bear arms," and has concluded on that basis that "the Second Amendment affords no protection for . . . possession by felons." *Marzzarella*, 614 F.3d at 92. Thus, under *Heller* and *Marzzarella*, §922(g)(1) permissibly prohibits firearms possession by an individual such as Plaintiff who has been convicted of a crime punishable by a term of imprisonment exceeding one year. 18 U.S.C. § 922(g)(1). The firearms ban is

presumptively lawful, and Plaintiff has properly alleged that he is subject to it. Therefore, I must now analyze the instant matter under the first step of the *Marzzarella* framework.

### b. Traditional Justification for Denying Felons the Right to Bear Arms

To meet the first hurdle under step one, Plaintiff must identify the traditional justifications for barring someone who is a felon from the protections of the Second Amendment. As discussed above, the Second Amendment's guarantee of an individual right to bear arms does not extend to convicted felons. *Binderup*, 836 F.3d at 347. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *Id.* at 348 (citing *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010). People who have "committed a serious criminal offense, violent or nonviolent," may lose their Second Amendment right to bear arms. *Id.* at 348-49. In this regard, the Third Circuit stated as follows:

> People who have committed or are likely to commit "violent offenses"— crimes "in which violence (actual or attempted) is an element of the offense," *Skoien*, 614 F.3d at 642; *see Voisine*, 136 S.Ct. at 2280— undoubtedly qualify as "unvirtuous citizens" who lack Second Amendment rights. *Barton*, 633 F.3d at 173–74; *see United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) (recognizing "a common-law tradition that the right to bear arms is limited to peaceable or virtuous citizens"); C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 727–28 (2009). But *Heller* recognized "longstanding prohibitions on the possession of firearms by felons," not just violent felons. 554 U.S. at 626, 128 S.Ct. 2783. The category of "unvirtuous citizens" is thus broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent. *See Skoien*, 614 F.3d at 640–41; *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations & Criminological Considerations*, 60 Hastings L.J. 1339, 1363–64 (2009); *see also Vongxay*, 594 F.3d at 1115 ("[F]elons are categorically different from the individuals who have a fundamental right to bear arms."). To the extent *Barton* suggests that people who commit serious crimes retain or regain their Second Amendment rights if

8

> they are not likely to commit a violent crime, 633 F.3d at 174, it is
> overruled.
>
> The view that anyone who commits a serious crime loses the right to keep
> and bear arms dates back to our founding era. "*Heller* identified ... as a
> 'highly influential' 'precursor' to the Second Amendment the Address and
> Reasons of Dissent of the Minority of the Convention of the State of
> Pennsylvania to Their Constituents." *Skoien*, 614 F.3d at 640 (quoting
> *Heller*, 554 U.S. at 604, 128 S.Ct. 2783). That report "asserted that
> citizens have a personal right to bear arms 'unless for *crimes committed*,
> or real danger of public injury.' " *Id.* (emphasis added) (quoting Bernard
> Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)).
> "[C]rimes committed"—violent or not—were thus an independent ground
> for exclusion from the right to keep and bear arms. And there is reason to
> believe that felon disarmament has roots that are even more ancient. *See*
> Kates, Jr., 82 Mich. L. Rev. at 266 ("Felons simply did not fall within the
> benefits of the common law right to possess arms.").
>
> The takeaway: persons who have committed serious crimes forfeit the
> right to possess firearms much the way they "forfeit other civil liberties,
> including fundamental constitutional rights." *Barton*, 633 F.3d at 175.

*Binderup,* 836 F.3d at 348–49. Clearly, the traditional justification for denying some criminal offenders like Plaintiff the right to arms is that they are "unvirtuous" because they committed serious crimes.

In the instant case, Plaintiff pled guilty to three felonies related to his purchase of a 12 gauge shotgun from a federal firearms licensee in which he falsely certified that he was not prohibited from purchasing a gun. This was a violation of § 922(g)(1). "Courts must presume that any offense within the ambit of §922(g)(1) is disqualifying unless the challenger offers a 'strong reason' to conclude otherwise." *Holloway v. Sessions*, 2017 WL 3077035, at *5 (M.D. Pa. July 19, 2017) (*citing Binderup*, at 351).

Therefore, I find that there is clear historical evidence that persons who have been convicted of felonies are "unvirtuous citizens" who are outside the scope of Second

9

Amendment protection and Plaintiff cannot meet the first prong of step one under *Marzzarella*.

### c. Distinguishing the Historically Barred Class

I must now determine whether Plaintiff has presented facts about himself that distinguish his circumstances from those of persons in the historically barred class; that is, whether Plaintiff has presented facts that show he is "no more dangerous than a typical law-abiding citizen," or that he "poses no continuing threat to society." *See Keyes v. Lynch*, 195 F.Supp.3d 702, 720 (M.D. Pa. July 11, 2016).

Plaintiff's Complaint contends: 1) he is "not a violent individual;" 2) he has been rehabilitated; and 3) the passage of time since his felony guilty plea all distinguish him from the traditional felon barred from possessing firearms. (Compl., at ¶¶ 40, 17.)

First, it is irrelevant whether Plaintiff is a "violent individual," or whether his felony was a crime of violence. According to *Binderup*, persons who have committed "serious crimes" which include violent or nonviolent offenses, can be forced to "forfeit their right to possess firearms." 836 F.3d at 348-49. Plaintiff pled guilty to violations of 18 U.S.C. §§ 922(a)(6) and 922(g)(1), both labeled felonies by the legislature and both punishable by up to 10 years in prison and a fine of up to $250,000.00. See 18 U.S.C. § 924(a)(2); U.S.S.G. § 5E1.2(c)(3). The classification of these offenses as felonies, as well as the extensive penalties associated with them, clearly indicate that Congress considered these violations to be serious. *See Medina v. Sessions*, 2017 WL 3912981, at *6 (D.D.C. Sept. 6, 2017) (stating that a crime that carried penalties of up to 30 years in prison or $1 million in fines revealed "a clear sign that Congress considered the crime a serious one.")

Next, the passage of time and Plaintiff's alleged rehabilitation is immaterial to the analysis in this matter. The Third Circuit has clearly rejected the claim that passage of time or evidence of rehabilitation will restore Second Amendment rights, stating that "there is no historical support for the view that the passage of time or evidence of rehabilitation will restore the Second Amendment rights that were forfeited." *Binderup*, 836 F.3d at 350. The *Binderup* court also found that "evidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." *Id.*, at 356.

I find Plaintiff cannot produce sufficient facts or evidence to distinguish himself from the class of persons – convicted felons - historically barred from possessing firearms. Accordingly, he also cannot meet the second prong of step one under the *Marzzarella* framework, and his as-applied challenge to 18 U.S.C. §922(g)(1) must fail.[2]

**D. State Law Convictions**

Plaintiff also argues that his 1982 state court convictions cannot form the basis for his firearms disability because they were all state misdemeanors at the time of the conviction punishable by terms of imprisonment of two years of less, and § 922(g)(1) applies only to an individual convicted of a felony. However, Plaintiff overlooks the fact that under Pennsylvania law, his conviction for carrying a firearm without a license under 18 Pa.C.S.A. § 6106 is considered a third-degree felony because he was also convicted of carrying a firearm on a public street in violation of 18 Pa.C.S.A. § 6108. *See Com. v. Bavusa*, 832 A.2d 1042, 1056 (Pa. 2003) (holding that contemporaneous violations of carrying a firearm without a license and carrying a firearm in a public place disqualify the

---

[2] As Plaintiff cannot satisfy step one under the *Marzzarella* framework, it is not necessary for me to consider step two and determine whether the regulation satisfies some form of heightened scrutiny.

11

unlicensed carrying offense from being classified as a misdemeanor); *see also Com. v. Mendozajr*, 71 A.3d 1023, 102829 (Pa. Super. Ct. 2013) ("Appellee's Section 6106 conviction was presumptively a felony because of his contemporaneous conviction for the Section 6108 offense, which independently foreclosed the misdemeanor grading of his Section 6106 offense.") Therefore, I find Plaintiff's argument to be unpersuasive, as his 1982 state court conviction under § 6106 is considered a felony and disqualifies him from owning a firearm under § 922(g)(1).

## V. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted and this matter shall be dismissed.